Dennis F. Dunne
Michael Hirschfeld
Samuel A. Khalil
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone:    (212) 530-5000
Facsimile:    (212) 822-5670

*Attorneys for Ad Hoc Committee of Second Lien Noteholders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x
|  |  |
|---|---|
| In re: | : | Chapter 11 |

| In re: | : | Chapter 11 |
|---|---|---|
|  | : |  |
| MPM SILICONES, LLC, et al., | : | Case No. 14-22503 (RDD) |
|  | : |  |
| Debtors. | : | Jointly Administered |

-------------------------------------------------------------------------x
: 
U.S. BANK NATIONAL ASSOC., as Indenture Trustee,  :
: 
Plaintiff,  :
:  Adversary Proceeding
:  No. 14-08238 (RDD)
v.  :
: 
WILMINGTON SAVINGS FUND SOCIETY, FSB, as  :
Indenture Trustee; MOMENTIVE PERFORMANCE  :
MATERIALS INC., JUNIPER BOND HOLDINGS I  :
LLC, JUNIPER BOND HOLDINGS II LLC, JUNIPER  :
BOND HOLDINGS III LLC, JUNIPER BOND  :
HOLDINGS IV LLC, MOMENTIVE PERFORMANCE  :
MATERIALS CHINA SPV INC., MOMENTIVE  :
PERFORANCE MATERIALS HOLDINGS INC.,  :
MOMENTIVE PERFORMANCE MATERIALS  :
QUARTZ, INC., MOMENTIVE PERFORMANCE  :
MATERIALS SOUTH AMERICA INC., MOMENTIVE  :
PERFORMANCE MATERIALS USA INC.,  :
MOMENTIVE PERFORMANCE MATERIALS  :
WORLDWIDE INC.; AND MPM SILICONES, LLC,  :
: 
Defendants.  :
-------------------------------------------------------------------------x
:

| | | |
|---|---|---|
| MOMENTIVE PERFORMANCE MATERIALS INC., MOMENTIVE PERFORMANCE MATERIALS WORLDWIDE INC., MOMENTIVE PERFORMANCE MATERIALS USA INC., JUNIPER BOND HOLDINGS I LLC, JUNIPER BOND HOLDINGS II LLC, JUNIPER BOND HOLDINGS III LLC, JUNIPER BOND HOLDINGS IV LLC, MOMENTIVE PERFORMANCE MATERIALS QUARTZ, INC., MPM SILICONES, LLC, MOMENTIVE PERFORMANCE MATERIALS SOUTH AMERICA INC., MOMENTIVE PERFORMANCE MATERIALS CHINA SPV INC. | : : : : : : : : : : : : : | Adversary Proceeding No. 14-08227 (RDD) |
| Plaintiffs, | : : : | |
| v. | : : : | |
| THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., solely as Trustee for the MPM Escrow LLC and MPM Finance Escrow Corp. 8.875% First-Priority Senior Secured Notes due 2020, | : : : : | |
| Defendant. | : | |

------------------------------------------------------------------------x
: 
| | | |
|---|---|---|
| MOMENTIVE PERFORMANCE MATERIALS INC., MOMENTIVE PERFORMANCE MATERIALS WORLDWIDE INC., MOMENTIVE PERFORMANCE MATERIALS USA INC., JUNIPER BOND HOLDINGS I LLC, JUNIPER BOND HOLDINGS II LLC, JUNIPER BOND HOLDINGS III LLC, JUNIPER BOND HOLDINGS IV LLC, MOMENTIVE PERFORMANCE MATERIALS QUARTZ, INC., MPM SILICONES, LLC, MOMENTIVE PERFORMANCE MATERIALS SOUTH AMERICA INC., MOMENTIVE PERFORMANCE MATERIALS CHINA SPV INC. | : : : : : : : : : : : : : | Adversary Proceeding No. 14-08228 (RDD) |
| Plaintiffs, | : : : | |
| v. | : : : | |
| WILMINGTON TRUST, N.A., solely as Trustee for the Momentive Performance Materials Inc. 10% Senior Secured Notes due 2020, | : : : | |
| Defendant. | : | |

------------------------------------------------------------------------x

- 2 -

**OMNIBUS REPLY OF AD HOC COMMITTEE OF SECOND LIEN
NOTEHOLDERS TO OBJECTIONS OF (I) U.S. BANK N.A., AS SUBORDINATED
NOTES TRUSTEE, (II) WILMINGTON TRUST, N.A, AS 1.5 LIEN TRUSTEE, AND
(III) AND BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS FIRST
LIEN TRUSTEE, TO DEBTORS' MOTION FOR AN ORDER ESTABLISHING
TIMELINE FOR CONFIRMATION- AND ADVERSARY-RELATED DISCOVERY**

The Ad Hoc Committee of Second Lien Noteholders (the "Ad Hoc Committee")[1]

hereby submits this omnibus reply (the "Reply") to the Objections of U.S. Bank N.A., as

indenture trustee (the "Subordinated Notes Trustee"), Wilmington Trust, N.A., as 1.5 lien trustee

(the "1.5 Lien Trustee"), and the Bank of New York Mellon Trust Company, N.A., as first lien

trustee (the "First Lien Trustee") (collectively, the "Trustees") to the Debtors' Motion for an

Order Establishing Timeline for Confirmation and Adversary-Related Discovery, dated June 5,

2014 (Docket No. 317) (the "Motion").

**PRELIMINARY STATEMENT**

1.    The Motion requests that the Court establish a schedule in connection with

the above-captioned bankruptcy cases (the "Chapter 11 Cases"), as well as the three above-

captioned adversary proceedings filed in connection with the Chapter 11 Cases (the "Adversary

Proceedings"), that would require that the Adversary Proceedings be trial-ready in time to be

heard in connection with the confirmation hearing  scheduled to commence in the Chapter 11

Cases on August 14, 2014 (the "Confirmation Hearing").

2.    Although the Adversary Proceedings all seek declarations from the Court

regarding questions of contract interpretation, the Trustees' objections to the Motion (the

---

[1]    The Ad Hoc Committee consists of entities that are the beneficial owners of, or holders of investment
authority with respect to, certain of the 9% Second-Priority Springing Lien Notes due 2021 and 9.5%
Second-Priority Springing Lien Notes due 2021 issued by Momentive Performance Materials Inc.
("MPM") pursuant to an indenture dated November 5, 2010 (collectively, the "Second Lien Notes").  The
current members of the Ad Hoc Committee are listed in the Verified Statement Pursuant to Fed. R. Bankr.
P. 2019 filed on May 13, 2014, in the above-captioned main cases by Milbank, Tweed Hadley & MᶜCloy
LLP [Docket No. 179].

"Objections") argue for completely opposite resolutions.  The Subordinated Notes Trustee

argues that the adversary proceeding it filed against the Debtors and Wilmington Savings Fund

Society, FSB, ("Wilmington Savings Fund") as indenture trustee, (the "Subordinated Notes

Adversary") requires no discovery and should be resolved, by summary judgment motion, even

more quickly than the schedule set forth in the Motion.  The First Lien Trustee and 1.5 Lien

Trustee argue, at the opposite extreme, that extensive discovery will be required with respect to

the issues raised in the adversary proceedings filed against them by the Debtors (the

"Redemption Premium Adversaries"), and that the Confirmation Hearing should be delayed until

mid-October to accommodate the requisite discovery and trial preparation.

   3. The Motion strikes an appropriate balance between these two extremes,

ensuring prompt resolution of the Adversary Proceedings at a pace that will not delay the

Confirmation Hearing, while still providing a sufficient, albeit compressed, time period for any

necessary discovery.  While the Subordinated Notes Trustee argues that the Subordinated Notes

Adversary should be tried on an ultra-expedited basis, there is in fact no basis for singling out for

special treatment the issues raised in that proceeding for resolution prior to the issues in the other

Adversary Proceedings.  Furthermore, there is no basis for the First Lien Trustee and 1.5 Lien

Trustee to contend that discovery in the Redemption Premium Adversaries will be so extensive

that the Confirmation Hearing should be delayed for months.  Such a delay will cause the Debtors

to miss important milestones provided for in the Restructuring Support Agreement and, as a result

of related termination events under the DIP Facilities and the Backstop Commitment Agreement,

any opportunity to exit from chapter 11 protection expeditiously or successfully will be lost.  To

the extent, if any, that discovery is appropriate in connection with the Adversary Proceedings,

- 4 -

discovery will be focused and limited, and the schedule set forth in the Motion provides adequate

time for all such discovery.

**ARGUMENT**

**I.     EXPEDITED RESOLUTION OF THE ADVERSARY PROCEEDING
        THROUGH SUMMARY JUDGMENT IS INAPPROPRIATE**

4.      The Subordinated Notes Trustee argues that the indenture (the

"Indenture") for the 11.5% Senior Subordinated Notes due 2016 (the "Subordinated Notes") is

"unambiguous," and therefore that "discovery is unnecessary to resolve the purely legal

[Adversary Proceeding]" which can be resolved by summary judgment.[2]  (Subordinated Notes

Trustee's Objection ¶ 2.)  The Subordinated Notes Trustee's suggestion, however, completely

ignores the Federal Rules of Civil Procedure which indisputably afford defendants the right to

decide how to respond to a complaint, whether through an answer or a motion to dismiss.  Fed.

R. Civ. P. 12(b).  The Subordinated Notes Trustee seeks to not only deprive the Debtors,

Wilmington Trust, and the Ad Hoc Committee, of this choice but to deny them any opportunity

at all to respond to the Subordinated Notes Trustee's complaint (the "Subordinated Notes

Complaint").

5.      If the Subordinated Notes Adversary is resolved through a motion for

summary judgment, without any opportunity to file an answer, the Ad Hoc Committee,

Wilmington Trust, and the Debtors will be unable to fully present its defenses, including waiver,

laches, and estoppel, or, based upon the limited scope of the summary judgment proposed by the

---

[2]      The Subordinated Notes Trustee unfairly characterizes the cases it cites in support of this contention.
While the Ad Hoc Committee agrees that "an issue that depends on the unambiguous terms of a written agreement is
particularly apt for resolution by summary judgment, being a question of law," In re G+G Retail, Inc., No. 06-
10152, 2010 WL 743918, at *3 (Bankr. S.D.N.Y. Feb. 24, 2010), the Subordinated Notes Trustee fails to establish
the underlying requirement that the definition of Senior Indebtedness under the Subordinated Notes Indenture is
unambiguous.  The Court may determine that the definition of Senior Indebtedness is ambiguous because it is
"objectively susceptible without reference outside of the contract to more than one interpretation by a reasonably
intelligent person," and if so, the intention of the parties with respect to this term will be a question of fact which
should be subject to discovery.  Id. (internal citations omitted).

Subordinated Notes Trustee, present highly relevant extrinsic evidence in support of these

defenses.  See Ad Hoc Committee Letter dated June 18, 2014 at 3-4.

      6.    In addition, a number of aspects of the Indenture itself reveal that the

Subordinated Notes Trustee's interpretation of the definition of Senior Indebtedness is patently

incorrect and that, as a result, its summary judgment motion is unlikely to be granted.  As noted

in the Ad Hoc Committee Letter:

- The exception the Subordinated Notes Trustee seeks to invoke applies, by its express terms, only to "any Indebtedness or obligation" that is subordinate or junior.  A lien, however, is neither "Indebtedness," as that term is defined in the Indenture, nor an "obligation," as that term is used in the Indenture and understood in the financial industry.  The "springing" of a second-priority lien simply does not implicate or trigger the exception—and this, by itself, would require the entry of summary judgment ***against*** the Subordinated Notes Trustee.

- While the Subordinated Notes Trustee would have the Court believe the disputed language represents anti-layering protection, the language—critically—does ***not*** appear in the Subordinated Notes Indenture's anti-layering provision, § 4.13. That provision uses the phrase "subordinate in right of payment," under which the Second Lien Notes are clearly "Senior Indebtedness."  In this crucial respect, the Subordinated Notes Indenture fails to follow the purported recommendation of a report issued by Fitch Ratings in February 2006, which the Complaint mistakenly cites as evidence bearing upon the parties' intent.  And, importantly, the Trustee's reading of the disputed language would offend the cardinal rule of construction that each provision is to be construed in the context of the contract as a whole.[3] The Subordinated Notes Trustee's reading would conflict with, among others, the provisions of the Subordinated Notes Indenture relating to Permitted Liens, which provide that Senior Indebtedness may be secured and retains its status as Senior Indebtedness without reference to lien priority.

---

[3]   *See*, *e.g.*, *In re Envirodyne Indus.,* 29 F.3d 301, 305 (7th Cir. 1994) ("On balance the appellants have the better of the purely semantic argument. But their interpretation makes no sense once the context of the terminology being interpreted is restored."); *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 139 (2d Cir. 2005) (following *Envirodyne* to interpret a note indenture); *see also T.G.I. Friday's Inc. v. Nat'l Rests. Mgmt., Inc.*, 59 F.3d 368, 373 (2d Cir. 1995) ("[I]t is axiomatic that, when interpreting a contract, the court generally must consider the contract as a whole so that it may give significance to each term."); *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) ("By examining the entire contract, we safeguard against adopting an interpretation that would render any individual provision superfluous."); *Bank of New York Trust Co., N.A. v. Franklin Advisers, Inc.*, 726 F.3d 269, 276, 279 (2d Cir. 2013)(noting that "[i]t is a well-established rule in this Circuit that the 'interpretation of Indenture provisions is a matter of basic contract law" and that indenture terms "should be read in light of the whole agreement").

- Applying the Subordinated Notes Trustee's construction would mean—nonsensically—that MPM's ABL Facility, as well as its First Lien Notes and 1½ Lien Notes also are not Senior Indebtedness, because each of the liens securing the indebtedness under the ABL Facility or each issue of the senior notes is junior to certain other liens, with the preposterous "result" that the Debtors' entire debt structure would rank *pari passu* with the Senior Subordinated Notes, and virtually every prospectus and other disclosure by MPM since 2006 would have been false. Not surprisingly, industry commentators have not endorsed the Subordinated Notes Trustee's views.

- If accepted, the Trustee's construction also would create, retroactively, an "historical default" at the time the "springing lien" feature of the Second Lien Notes was triggered in 2012.

Ad Hoc Committee Letter at 2-3.

7.      Given the proposed summary judgment motion's low likelihood of success, the Subordinated Notes Trustee's position appears designed to obtain for its own benefit two bites at the apple in the Subordinated Notes Adversary—with attendant and wholly unnecessary delay to confirmation.  First, the Subordinated Notes Trustee would file a summary judgment motion seeking a dispositive ruling based upon the four corners of the Subordinated Notes Complaint.  Then, when this fails (as the Ad Hoc Committee believes it will), the Subordinated Notes Trustee will seek extensive discovery that would substantially delay the Confirmation Hearing.

8.      Lastly, there is no basis for litigating the Subordinated Notes Adversary separate and apart from disposition of the overall Chapter 11 Cases, and it should consequently be resolved as part of the Confirmation Hearing.  The Subordinated Notes Trustee argues that "[b]ecause it is undisputed that the issue raised in the [Subordinated Notes Adversary] is a threshold issue relative to the confirmability of the  Debtor's proposed plan of reorganization," the Subordinated Notes Adversary should be adjudicated before the Confirmation Hearing. (Subordinated Notes Trustee's Opposition ¶¶ 3-4.)  The fact that the issue presented is a "threshold issue" does not preclude it from resolution at the Confirmation Hearing—many other

"threshold issues" will be resolved at that time.  There is no basis to single out this issue for early

adjudication and doing so would be unduly burdensome on all interested parties.

9.      No more meritorious are the Subordinated Notes Trustee's arguments

regarding the alleged inadequacies of the Motion's proposed schedule and, in actuality, these

argument support the Debtors' request to begin discovery as soon as possible.  If the

Subordinated Notes Trustee is correct, and discovery in connection with the Subordinated Notes

Adversary will require substantial time and effort, this process should commence as soon as

possible—it should not be stayed for weeks while the Subordinated Notes Trustee's proposed

motion for summary judgment is briefed, argued, and decided.

## II.    THERE IS NO BASIS FOR DELAYING THE CONFIRMATION HEARING AS REQUESTED BY THE FIRST LIEN AND 1.5 LIEN TRUSTEES

10.     The First Lien Trustee and 1.5 Lien Trustee (the "Lien Trustees") take the

opposite position with respect to the Motion, arguing that extensive discovery is required for the

Redemption Premium Adversaries and that the Confirmation Hearing should not commence

until mid-October.  The Lien Trustees argue that the Debtors' proposed discovery schedule is

"untenable" and "provides unworkable deadlines," and the schedule set forth in the Lien

Trustees' opposition propose to conduct discovery through September.  (Lien Trustees'

Opposition ¶¶ 5, 7, 12.)  These substantial delays will cause the Debtors to miss important

milestones in the Restructuring Support Agreement, and, as a result of related termination events

under the DIP Facilities and the Backstop Commitment Agreement, any opportunity to exit from

chapter 11 protection expeditiously or successfully will be lost.  These issues will all be obviated

if the Court issues an order adopting a schedule that comports with that of the Motion.

**III.    THE SCHEDULE SET FORTH IN  MOTION IS REASONABLE
COMPROMISE AND PROVIDES ADEQUATE TIME FOR
ADJUDCIATION OF  ADVERSARY PROCEEDINGS**

11.    The Trustees' arguments regarding the alleged inadequacies of the

Motion's proposed schedule are baseless.  If the Court decides discovery in the Adversary

Proceedings is appropriate, such discovery need not be excessive or without limits.  Extrinsic

evidence reflecting the parties' intent with respect to the relevant provisions will be limited to

evidence regarding a handful of specific indenture provisions.  As such, the timeline set forth in

the Motion provides adequate time for discovery in the Adversary Proceedings and the Chapter

11 Cases and strikes a reasonable balance between the Trustees' conflicting positions on the

appropriate schedule to govern these actions.

**WHEREFORE**, the Ad Hoc Committee respectfully requests that the Court grant

(i) the Debtors' Motion as set forth therein and (ii) any such other and further relief as the Court

may deem just and proper.


Dated:  New York, New York
         June 18, 2014



**MILBANK, TWEED, HADLEY & McCLOY LLP**

/s/ Dennis F. Dunne
Dennis F. Dunne
Michael Hirschfeld
Samuel A. Khalil
1 Chase Manhattan Plaza
New York, New York 10005-1413
Telephone:  (212) 530-5000
Facsimile:   (212) 530-5219
ddunne@milbank.com
skhalil@milbank.com

*Attorneys for Ad Hoc Committee of Second Lien Noteholders*