# MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP

**1 CHASE MANHATTAN PLAZA**

**NEW YORK, NY 10005**

212-530-5000

FAX: 212-530-5219

Dennis F. Dunne

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-20-7615-3000
FAX: 44-20-7615-3100

**FRANKFURT**
49-(0)69-71914-3400
FAX: 49-(0)69-71914-3500

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**BEIJING**
8610-5969-2700
FAX: 8610-5969-2707

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

**TOKYO**
813-5410-2801
FAX: 813-5410-2891

**SÃO PAULO**
55-11-3927-7700
FAX: 55-11-3927-7777

June 18, 2014

The Honorable Robert D. Drain
United States Bankruptcy Judge
United States Bankruptcy Court
300 Quarropas Street
White Plains, NY 10601-4140

      Re:    *In re MPM Silicones, LLC, et al.*, Case No. 14-22503 (RDD); *U.S. Bank National Assoc. v. Wilmington Savings Fund Society, et al.*, Adv. Proc. No. 14-8238 (RDD)

Dear Judge Drain:

      We represent the Ad Hoc Committee of Second Lien Noteholders (the "Ad Hoc Committee") whose members are holders of a substantial amount of second lien notes (the "Second Lien Notes") issued by MPM,[1] one of the Debtors in the above-captioned chapter 11 cases (the "Chapter 11 Cases").[2]  We are writing in response to the letter dated June 12, 2014 (the "Letter") filed by counsel to U.S. Bank National Association, the trustee for the Senior Sub Notes (the "Trustee"), in which the Trustee proposes to immediately file a motion for summary

---

[1] Any terms capitalized but not defined herein have the meanings ascribed to them in the Complaint for Declaratory Judgment dated May 30, 2014 (Adv. Proc. No. 14-8238, ECF No. 1).

[2] The current membership of the Ad Hoc Committee is set forth in the Verified Statement Pursuant to Bankruptcy Rule 2019 filed by Milbank, Tweed, Hadley & McCloy LLP in the Chapter 11 Cases.

Hon. Robert D. Drain
June 18, 2014
Page 2

judgment in the above-captioned adversary proceeding (the "Adversary Proceeding") and seeks pre-motion conference to that end. We are not persuaded that summary judgment is the correct procedure to address the subordination issue the Trustee has presented, nor do we see the need for the uniquely expedited treatment the Trustee proposes be given to this issue.

The underlying thesis of the Trustee's complaint (the "Complaint"), and the demand for immediate relief, is that the disputed language provides anti-layering protection to the Senior Sub Notes that will be violated by the Plan. Notably, however, even if it were possible to credit this thesis, against all the evidence, the Trustee's invocation of this purported anti-layering protection vis-à-vis the Second Lien Notes is a red herring. The Trustee does not dispute that *prior to* 2012, when the so-called "springing" of the lien currently securing the Second Lien Notes arose, the Senior Sub Notes stood behind the Second Lien Notes with respect to the Debtors' unencumbered property. The only effect of that lien was to give the Second Lien Noteholders priority over unsecured creditors *other than* the Senior Sub Noteholders, who, unlike the Senior Sub Noteholders, previously stood *pari passu* with the Second Lien Notes with regards to the property now subject to the "springing lien." Put succinctly, the Trustee has seized upon a feigned "issue" to demand expedited consideration of a pointless "claim."

In furtherance of this flawed premise, the Trustee argues that the Subordinated Notes Indenture is "unambiguous" and therefore "the issue presented in the case is exclusively legal" and "no fact-finding is necessary and summary judgment is an appropriate procedure for adjudication of this case." Letter at 1. This argument is belied by the Complaint, which relies upon, and quotes extensively from, a report issued by Fitch Ratings in February 2006 (the "Fitch Report") and two unrelated indentures and other documents prepared by TDS Investor Corporation (now known as Travelport LLC) in 2006 and 2013 and by Realogy Corp. in 2007— all in an effort to show how the Subordinated Notes Indenture should be construed. *See* Complaint, ¶¶ 35-48. The Trustee thus concedes *ab initio* that its construction of the indenture provisions the Complaint has put at issue requires recourse to extraneous sources—a position that is squarely at odds with the Letter's contention that the Subordinated Notes Indenture is clear and unambiguous on its face and compels summary judgment in the Trustee's favor, which should issue immediately.

The uncertainty implicit in the Complaint's recourse to extraneous materials and manifest in the Committee's counsel's remarks undoubtedly reflects the fact that there are numerous elements of the Subordinated Notes Indenture that negate the reading the Trustee now suggests is "unambiguous." Included among these, by way of illustration, are the following:

- The exception the Trustee seeks to invoke applies, by its express terms, only to "any Indebtedness or obligation" that is subordinate or junior. A lien, however, neither "Indebtedness," as that term is defined in the Subordinated Notes Indenture, nor an "obligation," as that term is used in the Subordinated Notes Indenture and understood in the financial industry. The "springing" of a second-priority lien simply does not implicate or trigger the exception—and this, by itself, itself, would require the entry of summary judgment *against* the Trustee.

Hon. Robert D. Drain
June 18, 2014
Page 3

- While the Trustee would have the Court believe the disputed language represents anti-layering protection, the language does ***not*** appear in the Subordinated Notes Indenture's anti-layering provision, § 4.13. That provision uses the phrase "subordinate in right of payment," under which the Second Lien Notes are "Senior Indebtedness." In this crucial respect, the Subordinated Notes Indenture fails to follow the purported recommendation of the Fitch Report, which the Complaint mistakenly cites as evidence bearing upon the parties' intent. And, importantly, the Trustee's reading of the disputed language would offend the cardinal rule of construction that each provision is to be construed in the context of the contract as a whole.[3]

- Applying the Trustee's construction would mean—nonsensically—that MPM's ABL Facility, First Lien Notes and 1½ Lien Notes also are not Senior Indebtedness because each of the liens securing the indebtedness under the ABL Facility or each issue of the senior notes is junior to certain other liens, with the preposterous "result" that the Debtors' entire debt structure would rank *pari passu* with the Senior Subordinated Notes, and virtually every prospectus and other disclosure by MPM since 2006 would have been false. Not surprisingly, industry commentators have not endorsed the Trustee's views.

- If accepted, the Trustee's construction also would create, retroactively, an "historical default" at the time the "springing lien" feature of the Second Lien Notes was triggered in 2012 (the "2012 Lien Event").

We believe another factor that bears upon the merit of the Trustee's request to proceed by summary judgment are defenses that will be asserted by the Ad Hoc Committee, Wilmington Savings Fund Society, and the Debtors. These defenses include waiver, laches and estoppel arising from the failure of the Trustee or any Senior Sub Noteholder to (i) timely object to the Debtors' public disclosure expressly stating that the Second Lien Notes are "Senior Indebtedness" under the Subordinated Notes Indenture or (ii) timely assert that the 2012 Lien Event would turn the Second Lien Notes into something other than "Senior Indebtedness." In this regard, the Court should be aware that:

---

[3] *See*, *e.g.*, *In re Envirodyne Indus.,* 29 F.3d 301, 305 (7th Cir. 1994) ("On balance the appellants have the better of the purely semantic argument. But their interpretation makes no sense once the context of the terminology being interpreted is restored."); *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 139 (2d Cir. 2005) (following *Envirodyne* to interpret a note indenture); *see also T.G.I. Friday's Inc. v. Nat'l Rests. Mgmt., Inc.*, 59 F.3d 368, 373 (2d Cir. 1995) ("[I]t is axiomatic that, when interpreting a contract, the court generally must consider the contract as a whole so that it may give significance to each term."); *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) ("By examining the entire contract, we safeguard against adopting an interpretation that would render any individual provision superfluous.").

Hon. Robert D. Drain
June 18, 2014
Page 4

- The Second Lien Notes themselves and the Debtors' prospectuses concerning the Second Lien Notes—issued *after* the Senior Sub Notes were issued—expressly represented to potential purchasers that the Second Lien Notes would be senior in right of payment to the Senior Sub Notes.

- The Prospectus for Resale of the Senior Sub Notes dated May 13, 2013—well *after* the 2012 Lien Event—expressly provides that the Senior Sub Notes are subordinated to the Second Lien Notes.

In each instance, the failure to object or otherwise make known the position now advanced in the Complaint prevented investors from making a fully informed decision regarding the purchase of the Second Lien Notes and prevented the Second Lien Noteholders from considering whether to forego the "springing" of the lien in 2012, which surely would have been a course of action they would have considered had they been made aware of the purported consequences of such an event.

As a procedural matter, there is no basis for litigating the Adversary Proceeding other than as part of the Confirmation Hearing. The Trustee's argument that the "issues raised this adversary proceeding are legal and dispositive . . . and should be resolved by the Court prior to plan confirmation hearings" could be made regarding almost every issue relevant to plan confirmation. Despite the "toggle" features built into the Plan, various parties have already asserted that the Plan is unconfirmable[4] and similar or other assertions may be raised by others in connection with confirmation. There is no basis to single out this issue for early adjudication, and doing so would be unduly burdensome on all parties given the already compressed schedule for confirmation.

Further, while the Trustee asserts that its proposed expedited schedule would promote judicial economy, even under such schedule the Adversary Proceeding would be adjudicated only two weeks in advance of the Confirmation Hearing, meaning that a substantial portion of the work required to prepare for the Confirmation Hearing will have already been completed before this Court renders any decision on the subordination issue. The Ad Hoc Committee respectfully requests that the Adversary Proceeding be decided as part of the Confirmation Hearing as suggested in the Debtors' Motion for an Order Establishing a Timeline

---

[4] *See, e.g.*, Objection of Wilmington Trust, National Association, as Indenture Trustee, to Adequacy of the Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization [Docket No. 378] (asserting that the Plan is patently unconfirmable); Joinder of the Bank of New York Mellon Trust Company, N.A. in Its Capacity as First Lien Trustee, to the Objection of Wilmington Trust, National Association, as Indenture Trustee to Adequacy of the Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization [Docket No. 381] (same); Objection of Fortress Investment Group LLC to Debtors' Motion for Orders (I) Authorizing the Debtors to Assume the Restructuring Support Agreement and (II) Authorizing and Approving the Debtors' (A) Entry Into and Performance Under the Backstop Commitment Agreement, (B) Payment of Related Fees and Expenses, and (C) Incurrence of Certain Indemnification Obligations [Docket No. 330] (asserting that the Plan provides for disparate treatment).

14-08238-rdd    Doc 12    Filed 06/18/14    Entered 06/18/14 12:23:20    Main Document
Pg 5 of 5

Hon. Robert D. Drain
June 18, 2014
Page 5

for Confirmation- and Adversary Proceeding-Related Discovery, dated June 5, 2014 (Case No. 14-22503, ECF No. 317).

   We look forward to discussing this matter at any time the Court requests, including at the June 19, 2014 omnibus hearing.

          Respectfully submitted,

          /s/ Dennis. F. Dunne

          Dennis F. Dunne

cc: Susheel Kirpalani (via ECF and email)
   Seth Lieberman (via ECF and email)
   Patrick Sibley (via ECF and email)
   Matthew Feldman (via ECF and email)
   Jennifer Hardy (via ECF and email)
   Ira Dizengoff (via ECF and email)
   Philip Dublin (via ECF and email)