AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000
Ira S. Dizengoff
Stephen M. Baldini
Philip C. Dublin
Brian T. Carney

*Counsel for Apollo Global Management, LLC
and certain of its affiliated funds*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------x

In re

MPM SILICONES, LLC, *et al.*,[1]

              Debtors.

_____

U.S. Bank National Association, as Indenture
Trustee,

              Plaintiff,

     v.


Wilmington Savings Fund Society, FSB, as
Indenture Trustee; Momentive Performance
Materials, Inc.; Juniper Bond Holdings I LLC;
Juniper Bond Holdings II LLC; Juniper Bond
Holdings III LLC; Juniper Bond Holdings IV
LLC; Momentive Performance Materials
China SPV Inc.; Momentive Performance
Materials Holdings Inc.; Momentive
Performance Materials Quartz, Inc.;
Momentive Performance Materials South
America Inc.; Momentive Performance
Materials USA Inc.; Momentive Performance

Chapter 11

Case No. 14-22503 (RDD)

(Jointly Administered)


Adversary Proceeding
No. 14-08238 (RDD)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Juniper Bond Holdings I LLC (9631), Juniper Bond Holdings II LLC (9692), Juniper Bond Holdings III LLC (9765), Juniper Bond Holdings IV LLC (9836), Momentive Performance Materials China SPV Inc. (8469), Momentive Performance Materials Holdings Inc. (8246), Momentive Performance Materials Inc. (8297), Momentive Performance Materials Quartz, Inc. (9929), Momentive Performance Materials South America Inc. (4895), Momentive Performance Materials USA Inc. (8388), Momentive Performance Materials Worldwide Inc. (8357), and MPM Silicones, LLC (5481).

Materials Worldwide Inc.; and MPM
Silicones, LLC,

                                    Defendants.

-------------------------------------------------------- x

### MOTION OF APOLLO GLOBAL MANAGEMENT, LLC AND
### CERTAIN OF ITS AFFILIATED FUNDS FOR AN ORDER PERMITTING
### INTERVENTION IN ADVERSARY PROCEEDING NO. 14-08238 (RDD)

Apollo Global Management, LLC and certain of its affiliated funds (collectively,

"Apollo"),[2] by and through its undersigned counsel, hereby moves for entry of an order,

substantially in the form attached hereto as **Exhibit A**, pursuant to section 1109 of title 11 of the

United States Code (the "Bankruptcy Code"), Rule 24 of the Federal Rules of Civil Procedure

(the "Federal Rules") and Rule 7024 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), authorizing Apollo to intervene as a defendant in the above-captioned

adversary proceeding (the "Subordinated Notes Adversary Proceeding").  In support of this

motion, Apollo respectfully represents as follows:

### PRELIMINARY STATEMENT

1.      Pursuant to the Subordinated Notes Adversary Proceeding, plaintiff U.S. Bank

National Association ("U.S. Bank"), as Indenture Trustee for the 11.5% Senior Subordinated

Notes due 2016 (the "Subordinated Notes") issued by defendant Momentive Performance

Materials, Inc. ("MPM") pursuant to an Indenture dated as of December 4, 2006 (as amended,

the "Subordinated Notes Indenture"), seeks a declaration that the Subordinated Notes are not

subordinated in right of payment to the 9.0% Second-Priority Springing Lien Notes due 2021

and the euro-denominated 9.5% Second-Priority Springing Lien Notes due 2021 issued by MPM

pursuant to an Indenture dated as of November 5, 2010 (the "Second Lien Notes Indenture"),

---

[2] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the
complaint filed by U.S. Bank National Association, as Indenture Trustee, in the Subordinated Notes Adversary
Proceeding (as defined below) [Adv. Pro. No. 14-08238, ECF No. 1] (the "Complaint").

with The Bank of New York Mellon as indenture trustee (together, the "Second Lien Notes").

By this motion, Apollo seeks to exercise its unconditional right to intervene as a defendant in the

Subordinated Notes Adversary Proceeding to protect its interests in the Debtors' estates, as a

holder of, *inter alia*, approximately 39% of the Debtors' Second Lien Notes.[3]  As a party in

interest in the Chapter 11 Cases (as defined below), Apollo has an absolute right to intervene in

the Subordinated Notes Adversary Proceeding pursuant to applicable provisions of the

Bankruptcy Code and the Federal Rules.

2.      Before filing this motion, Apollo sought U.S. Bank's consent for Apollo to

intervene in this adversary proceeding.  Despite previously consenting to intervention in this

adversary proceeding by the Ad Hoc Committee,[4] and despite Apollo's statutory right to

intervene, U.S. Bank has not consented to Apollo's intervention.

3.      Even absent its unconditional right to intervene, Apollo's vested interest in the

outcome of the Subordinated Notes Adversary Proceeding and significant role in these cases

supports intervention as a matter of right under Federal Rule 24(a)(2) (as made applicable to the

Subordinated Notes Adversary Proceeding by Bankruptcy Rule 7024).  Indeed, before the

commencement of the Chapter 11 Cases, Apollo played a critical role in the negotiation of the

RSA (as defined below), which was ultimately executed by the Debtors, Apollo and members of

the Ad Hoc Committee.  The RSA laid the groundwork for the Debtors' expeditious exit from

bankruptcy by setting forth the material terms of the Plan,[5] including the Backstop Commitment

---

[3]Notably, Apollo also owns approximately 33% of the Subordinated Notes.  Apollo is also owns approximately
90.4% of the equity interests in Momentive Performance Materials Holdings LLC, the ultimate parent of the
Debtors.

[4]"Ad Hoc Committee" means the ad hoc committee of certain holders of Second Lien Notes that are signatories to
the Backstop Commitment Agreement or RSA represented by Milbank, Tweed, Hadley & McCloy LLP.

[5]"Plan" means the *Joint Chapter 11 Plan of Reorganization for Momentive Performance Materials Inc. and its
Affiliated Debtors*, dated May 12, 2014 [No. 14-22503, ECF No. 172].

Agreement (as defined below) under which Apollo and members of the Ad Hoc Committee committed to backstop the $600 million Rights Offering (as defined below), which is necessary to fund distributions under the Plan and the Debtors' post-emergence operations.

4.      The resolution of the Subordinated Notes Adversary Proceeding will have a significant effect on the Debtors' overall restructuring efforts.  Specifically, and germane to the instant motion, the Plan provides, *inter alia*, that (i) the Subordinated Notes are subordinated in right of payment to the Second Lien Notes, (ii) holders of claims arising under the Subordinated Notes shall not receive any Plan distributions on account of such claims, and (iii) any Plan distribution to which holders of claims arising under the Subordinated Notes would have otherwise been entitled, if any, shall constitute a portion of the recovery of holders of claims arising under the Second Lien Notes.  As such, the outcome of the Subordinated Notes Adversary Proceeding bears directly on the treatment contemplated by the Plan pursuant to the terms agreed to by the Debtors, Apollo and the members of the Ad Hoc Committee.

5.      Further, the Court's determination with respect to subordination of the Subordinated Notes will have a direct impact on the distributions made to creditors under the Plan and, thus, on Apollo's recoveries in the Chapter 11 Cases.  In fact, due to Apollo's significant holdings of Second Lien Notes, the result of the Subordinated Notes Adversary Proceeding will have no greater impact on any single creditor in these cases than it will on Apollo.  As such, Apollo has a unique interest in vigorously defending against U.S. Bank's allegation that the Subordinated Notes are *pari passu* in right of payment with the Second Lien Notes.

6.      For these reasons, and as further set forth below, Apollo seeks to exercise its absolute right to intervene as a plaintiff in the Subordinated Notes Adversary Proceeding.

4

## JURISDICTION

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 1334

and 2201.  Venue is proper for the Subordinated Notes Adversary Proceeding and this motion in

this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The Subordinated Notes Adversary Proceeding is a core proceeding pursuant to

28 U.S.C. § 157 and Bankruptcy Rule 7001.

9.      The predicates for the relief requested herein are Bankruptcy Code section

1109(b), Federal Rule 24 and Bankruptcy Rule 7024.

## BACKGROUND

### A.      The RSA and Backstop Commitment Agreement

10.     Before the commencement of the Chapter 11 Cases, the Debtors initiated

discussions with certain of their major stakeholders, including Apollo and the Ad Hoc

Committee, regarding a restructuring of the Debtors' outstanding debt obligations.  Through

arm's-length negotiations, Apollo, the Ad Hoc Committee and the Debtors settled on the terms

of a balance sheet restructuring of the Debtors' prepetition obligations, memorialized in the

Restructuring Support Agreement (the "RSA"), dated as of April 13, 2014.  Among other things,

the RSA obligates Apollo and the Ad Hoc Committee to support the Plan, which provides for,

*inter alia*: (i) payment in full in cash of (a) the Debtors' general unsecured creditors and

(b) holders of claims arising from the Cash Flow Facility;[6] (ii) if holders of the First Lien Notes

and 1.5 Lien Notes vote in favor of the Plan,[7] payment in full in cash (including accrued and

---

[6] "Cash Flow Facility" means that certain revolving credit facility with maximum aggregate availability of $75 million governed by that certain Second Amended and Restated Credit Agreement, dated as of April 24, 2013.

[7] "First Lien Notes" means those certain 8.875% First-Priority Senior Secured Notes due 2020 issued pursuant to that certain Indenture dated as of October 25, 2012, with The Bank of New York Mellon Trust Company, N.A., as indenture trustee.  "1.5 Lien Notes" means those certain 10% Senior Secured Notes due, 2020, issued pursuant to

unpaid interest, but excluding any premium) or if such holders vote against the Plan, replacement

notes (which may include any applicable premium, as determined by the Court); (iii) conversion

of the Second Lien Notes into new equity of reorganized Momentive Performance Materials, Inc.

(subject to dilution by a management incentive plan and the new equity to be issued pursuant to

the Rights Offering); (iv) subscription rights to holders of Second Lien Notes in connection with

the Rights Offering; (v) recovery to holders of Holdings PIK Note Claims[8] in the amount of cash

available at Momentive Performance Materials Holdings Inc. as of the effective date of the Plan;

(vi) no recovery to the holders of Subordinated Notes; and (vii) no recovery to holders of equity.

11.     Additionally, the RSA contemplates a $600 million rights offering (the "Rights

Offering"), which is the lynchpin of the Debtors' restructuring.  Apollo and members of the Ad

Hoc Committee have committed to backstop the Rights Offering pursuant to a backstop

commitment agreement (the "Backstop Commitment Agreement") between the Debtors, Apollo

and the members of the Ad Hoc Committee.  The Backstop Commitment Agreement, like the

RSA, was the result of extensive arm's-length negotiations and ensures that the Debtors have

access to sufficient liquidity to fund the distributions contemplated by the Plan and working

capital for the reorganized Debtors.

**B.      The Debtors' Chapter 11 Cases**

12.     On April 13, 2014, MPM Silicones, LLC and each of the other Debtors filed

voluntary petitions for relief under chapter 11 of the Bankruptcy Code commencing the above-

captioned chapter 11 cases (the "Chapter 11 Cases").  The Debtors continue to operate their

---

that certain Indenture dated as of May 25, 2012 (as amended, modified or supplemented from time to time) by and
between Momentive Performance Materials Inc., as issuer, and Wilmington Trust, N.A. as indenture trustee.

[8] "Holdings PIK Note Claims" means claims arising under that certain pay-in-kind unsecured 11.00% Senior
Discount Note, dated December 4, 2006, due June 4, 2017, with an original principal amount of $400 million, issued
by Momentive Performance Materials Holdings Inc.

businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. The

Chapter 11 Cases have been consolidated for procedural purposes only.

13.     On April 22, 2014, a statutory committee of unsecured creditors was appointed in

these cases. As of the date hereof, no trustee or examiner has been appointed in the Debtors'

cases.

14.     On May 9, 2014, the Debtors filed the RSA/BCA Motion,[9] seeking authority to,

*inter alia*, (i) assume the RSA and (ii) enter into and perform under the Backstop Commitment

Agreement. The hearing to consider approval of the RSA and the Backstop Commitment

Agreement has been scheduled for June 19, 2014.

15.     Thereafter, on May 12, 2014, the Debtors filed the Plan and the related disclosure

statement [No. 14-22503, ECF No. 173] (the "Disclosure Statement"). The hearing to consider

the adequacy of the Disclosure Statement is set for June 19, 2014.

## C.     The Adversary Proceeding

16.     On May 30, 2014, U.S. Bank commenced the Subordinated Notes Adversary

Proceeding against the Debtors and against Wilmington Savings Fund Society, FSB

("Wilmington"), as successor indenture trustee under the Second Lien Notes Indenture, seeking,

*inter alia*, a declaratory judgment that the Subordinated Notes are *pari passu* and not

subordinated in right of payment to the Second Lien Notes based on the allegation that the

Second Lien Notes are not "Senior Indebtedness" under the Second Lien Notes Indenture.

Apollo, as a the largest holder of Second Lien Notes will be directly impacted by the result of

this Adversary Proceeding and therefore seeks to intervene in same.

---

[9] *Debtors' Motion for Orders (I) Authorizing the Debtors to Assume the Restructuring Support Agreement and (II) Authorizing and Approving the Debtors' (A) Entry into and Performance Under the Backstop Commitment Agreement, (B) Payment of Related Fees and Expenses, and (C) Incurrence of Certain Indemnification Obligations* [No. 14-22503, ECF No. 147] (the "RSA/BCA Motion").

## RELIEF REQUESTED

17.      Apollo respectfully requests that the Court enter an order, substantially in the

form attached hereto as **Exhibit A**, pursuant to Bankruptcy Code section 1109 and Federal Rule

24, as made applicable to the Subordinated Notes Adversary Proceeding by Bankruptcy Rule

7024, authorizing Apollo to intervene as a defendant in the Subordinated Notes Adversary

Proceeding.

## BASIS FOR RELIEF

18.      Apollo has an unconditional right to intervene in the Subordinated Notes

Adversary Proceeding pursuant to the express provisions of the Bankruptcy Code and the

Federal Rules and as a result of Apollo's vested interest in the outcome of the dispute at issue.  A

party in interest's right to intervene in an action is governed by Federal Rule 24, as made

applicable to the Subordinated Notes Adversary Proceeding and the instant motion by

Bankruptcy Rule 7024.  Federal Rule 24 provides, in relevant part, that:

> [o]n timely motion, the court must permit anyone to intervene
> who:
>
>> (1) is given an unconditional right to intervene by a federal
>> statute; or
>>
>> (2) claims an interest relating to the property or transaction
>> that is the subject of the action, and is so situated that
>> disposing of the action may as a practical matter impair or
>> impede the movant's ability to protect its interest, unless
>> existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).  Bankruptcy Rule 7024 governs intervention in an adversary proceeding

and directs simply that Federal Rule 24 "applies in adversary proceedings."  Fed. R. Bankr. P.

7024.

8

19.     Bankruptcy Code section 1109 provides, in relevant part, that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Thus, Bankruptcy Code section 1109(b) confers upon these parties in interest an unconditional right to intervene under Federal Rule 24(a)(1).

20.     In the instant case, Apollo is the largest holder of the Second Lien Notes and the largest holder of Subordinated Notes. Accordingly, Apollo falls squarely within the definition of "party in interest" enumerated in Bankruptcy Code section 1109(b) as both a "creditor" and an "equity security holder" and, therefore, has an unconditional right to intervene in the Subordinated Notes Adversary Proceeding under Federal Rule 24(a)(1).

21.     Courts within this Circuit and have consistently held that a party in interest may intervene in adversary proceedings as a matter of right. Indeed, in *Term Loan Holder Committee v. Ozer Group, L.L.C. (In re Caldor Corp.)*, the United States Court of Appeals for the Second Circuit (the "Second Circuit") considered, as a matter of first impression in the Circuit, whether Bankruptcy Code section 1109(b) conferred upon parties in interest "an unconditional right to intervene in adversary proceedings." 303 F.3d 161, 166 (2d Cir. 2002). In determining that Bankruptcy Code section 1109(b) did, in fact, confer such a right, the Second Circuit opined that the plain meaning of the phrase "any issue in a case" grants to a party in interest "a right to raise, appear and be heard on *any issue* regardless of whether it arises in a contested matter or an adversary proceeding." *See id.* at 169 (emphasis in original) (holding that a committee of term loan holders had the right to intervene in an adversary proceeding by joint liquidators against chapter 11 debtors); *see also Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns*

9

*Corp.)*, 285 B.R. 848, 853-54 (Bankr. S.D.N.Y. 2002) ("[T]he Second Circuit [in *Caldor*]

determined that section 1109(b) of the Bankruptcy Code is applicable in adversary proceedings

as it is in cases under the Bankruptcy Code, and hence that 'a statute of the United States confers

an unconditional right to intervene,' within the meaning of Fed. R. Civ. P. 24(a)(1).") (internal

citations omitted).

22.    In the wake of *Caldor Corp.*, bankruptcy courts in the Southern District of New

York have routinely granted creditors—such as Apollo in these bankruptcy cases—relief similar

to that requested by this motion. *U.S. Bank Nat'l Ass'n v. Dynegy Holdings, LLC (In re Dynegy*

*Holdings, LLC, et al.)*, Adv. Pro. No. 11-9083 (CGM) (Bankr. S.D.N.Y. Jan 26, 2012)

(authorizing a debtor to intervene in adversary proceeding commenced by an indenture trustee

where the amended complaint alleged increased damages that threatened to undermine the

debtors' plan of reorganization); *Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns*

*Corp. et al.)*, Adv. Pro. No. 02-8051 (REG) (Bankr. S.D.N.Y. Jan. 20, 2005) (authorizing Bank

of Montreal and Wachovia to intervene in an adversary proceeding relating to a constructive trust

and certain unjust enrichment claims where each party held a security interest in assets at issue);

*see also Harbinger Capital Partners LLC et. al. v. Ergen et. al. (In re LightSquared Inc., et al.)*,

Adv. Pro. No. 13-01390 (SCC) (Bankr. S.D.N.Y. Aug. 22, 2013) (permitting creditors to

intervene by statement in accordance with prior scheduling order entered by the court

authorizing such intervention).

23.    In addition to this express statutory grant, Apollo's significant role in these cases

supports intervention as a matter of right under Federal Rule 24(a)(2), which requires that a court

permit the intervention in a proceeding of any party that "claims an interest relating to the

property or transaction that is the subject of the action, and is so situated that disposing of the

action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). First, as a result of being the largest holder of Second Lien Notes (as well as Subordinated Notes) and its rights and obligations under the RSA and the Backstop Commitment Agreement, Apollo clearly has a substantial interest in the Subordinated Notes Adversary Proceeding. Second, denying Apollo the ability to intervene and to participate fully in the Subordinated Notes Adversary Proceeding will clearly impair and impede Apollo's ability to protect its interests as a significant creditor of the Debtors. Third, no party to the Subordinated Notes Adversary Proceeding adequately represents Apollo's unique position in the Chapter 11 Cases.

24.     Indeed, as noted above, Apollo is the single largest holder of both the Second Lien Notes and the Subordinated Notes and, as such, no single creditor will be more significantly impacted by the outcome of the Subordinated Notes Adversary Proceeding than Apollo. Additionally, Apollo has a unique interest in ensuring that the dispute regarding the payment priority of the Subordinated Notes is resolved expeditiously and in a manner consistent with applicable law to ensure that the Debtors are able to restructure their obligations on the terms agreed to among the Debtors and their key creditor constituencies. Apollo will work with the Debtors and the Ad Hoc Committee to prevent duplication of efforts and to ensure that the Debtors' estates do not incur unnecessary expenses in connection with any intervening party's role in this adversary proceeding.

25.     Federal Rule 24(a)(1) and Bankruptcy Rule 7024 also require that a motion to intervene be timely. Courts within the Second Circuit analyze four factors when determining whether a motion to intervene is timely: "'(a) the length of time [the applicant] knew or should have known of [its] interest before making the motion; (b) prejudice to existing parties resulting

11

from [the applicant's] delay; (c) prejudice to [the applicant] if the motion is denied; and (d) the

presence of unusual circumstances militating for or against a finding of timeliness.'" *Int'l*

*Design Concepts, LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 235 (S.D.N.Y. 2007) (quoting *United*

*States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987)).  Apollo's motion to intervene is

unquestionably timely.  Apollo is moving to intervene less than three weeks after the Debtors

commenced this Subordinated Notes Adversary Proceeding and before any existing defendant

has filed any responsive pleading.  The timing of Apollo's intervention does not prejudice any

party, and there are no "unusual circumstances" that militate against a finding of timeliness.

26.    Accordingly, Apollo respectfully requests that the Court authorize Apollo's

intervention as a defendant, as a matter of right, in the Subordinated Notes Adversary

Proceeding.[10]

[*The remainder of the page has been left blank intentionally.*]

---

[10] The deadline for responding to the Complaint has not yet expired pursuant to Fed. R. Civ. P. 12(a).  The question of the timing of the response to the Complaint is currently the subject of separate briefing.

**WHEREFORE**, for the foregoing reasons, Apollo respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, pursuant to Bankruptcy Code section 1109 and Federal Rule 24, as made applicable to the Subordinated Notes Adversary Proceeding by Bankruptcy Rule 7024, authorizing Apollo to intervene as a defendant in the Subordinated Notes Lien Adversary Proceeding.

Dated: New York, New York
        June 18, 2014

AKIN GUMP STRAUSS HAUER & FELD LLP

By:    */s/ Philip C. Dublin*

Ira S. Dizengoff
Stephen M. Baldini
Philip C. Dublin
Brian T. Carney

One Bryant Park
New York, NY 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
idizengoff@akingump.com
sbaldini@akingump.com
pdublin@akingump.com
bcarney@akingump.com

*Counsel to Apollo Global Management, LLC
and certain of its affiliated funds*

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------X

In re:

MPM SILICONES, LLC, *et al.*,[1]

              Debtors.

_____

U.S. Bank National Association, as Indenture
Trustee,

              Plaintiff,

    v.

Wilmington Savings Fund Society, FSB, as
Indenture Trustee; Momentive Performance
Materials, Inc.; Juniper Bond Holdings I LLC;
Juniper Bond Holdings II LLC; Juniper Bond
Holdings III LLC; Juniper Bond Holdings IV
LLC; Momentive Performance Materials
China SPV Inc.; Momentive Performance
Materials Holdings Inc.; Momentive
Performance Materials Quartz, Inc.;
Momentive Performance Materials South
America Inc.; Momentive Performance
Materials USA Inc.; Momentive Performance
Materials Worldwide Inc.; and MPM
Silicones, LLC,

              Defendants.

---------------------------------------------------------X

Chapter 11

Case No. 14-22503 (RDD)

Adversary Proceeding
No. 14-08238 (RDD)

**ORDER GRANTING MOTION OF APOLLO GLOBAL MANAGEMENT, LLC**
**AND CERTAIN OF ITS AFFILIATED FUNDS FOR AN ORDER PERMITTING**
**INTERVENTION IN ADVERSARY PROCEEDING NO. 14-08238  (RDD)**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are Juniper Bond Holdings I LLC (9631), Juniper Bond Holdings II LLC (9692), Juniper Bond Holdings III
LLC (9765), Juniper Bond Holdings IV LLC (9836), Momentive Performance Materials China SPV Inc. (8469),
Momentive Performance Materials Holdings Inc. (8246), Momentive Performance Materials Inc. (8297),
Momentive Performance Materials Quartz, Inc. (9929), Momentive Performance Materials South America Inc.
(4895), Momentive Performance Materials USA Inc. (8388), Momentive Performance Materials Worldwide Inc.
(8357), and MPM Silicones, LLC (5481).

Upon the motion (the "Motion")[2] of Apollo Global Management, LLC and certain of its affiliated funds (collectively, "Apollo") for entry of an order pursuant to Bankruptcy Code section 1109, Federal Rule 24 and Bankruptcy Rule 7024, authorizing Apollo to intervene as a defendant in the Subordinated Notes Adversary Proceeding as fully set forth in the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that notice of the Motion is appropriate under the circumstances; and any objections, if any, to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is **ORDERED** that:

1.    The relief requested in the Motion is granted.

2.    Apollo is authorized to intervene in the Subordinated Notes Adversary Proceeding as a defendant pursuant to Bankruptcy Code section 1109(b) and Federal Rule 24, as made applicable to the Subordinated Notes Adversary Proceeding by Bankruptcy Rule 7024, and may participate in the Subordinated Notes Adversary Proceeding as if it were a defendant in such proceeding.

3.    Apollo is authorized to take any and all actions to defend and protect its interests in the Subordinated Notes Adversary Proceeding.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning(s) ascribed to such terms in the Motion.

       4.       This Court shall retain jurisdiction with respect to any and all matters arising from or relating to the implementation or interpretation of this Order.

Dated: _____, 2014
White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

3